IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PHILIP JOSEPH ARCAND, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) CR 02-C0-0464-S |
| | ) CV 04-C0-8026-S |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION**

Philip Joseph Arcand initiated the present action by filing a motion pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. (Doc. 25).[1] He asserts (1) that the sentence enhancements applied to him were neither subsumed within the elements of his offense of conviction nor were they enumerated in the indictment and (2) the facts to which he pled guilty support a sentence far less severe than the sentence imposed. (*Id*. at p. 5).

**BACKGROUND**

The defendant was indicted on September 27, 2002, in a one hundred fifty-eight count indictment alleging that he was involved in an illegal telemarketing scheme. He was charged with using the mail and wire communications to defraud various individuals, conspiring to defraud Compass Bank, making false representations on credit account applications, bribery of a bank official, bank fraud, fraudulent use of credit card numbers, and money laundering. (Doc. 1). The United States also sought forfeiture of property derived from the illegal activity. (*Id*.).

The defendant entered into a plea agreement with the United States in April 2004, wherein he agreed to plead guilty to Count Nineteen of the indictment, which alleged that he was

---

[1] References to "Doc. ___" are to the documents as numbered by the Clerk of the Court in the court's record in this case.

involved in a conspiracy to commit bank fraud and bribery of bank officials.  (Doc. 1, Count 19).  In exchange for his plea of guilty, the United States agreed to recommend that the defendant receive a three-level reduction for acceptance of responsibility and that he be sentenced to the low end of the Sentencing Guidelines.  (Doc. 17 at p. 1).  The United States further recommended that the sentence to be imposed run concurrently with the sentence he was already serving in a related case out of the Central District of California.  (*Id*.).  As a part of the plea agreement, the defendant relinquished his right to appeal his conviction and to file a motion pursuant to 28 U.S.C. § 2255.  (*Id*. at p. 5).

The defendant pled guilty on April 22, 2004.  Prior to the plea, the defendant and his counsel executed a "Guilty Plea Advice of Rights Certification," which detailed the rights he would be waiving by pleading guilty.  (Doc. 18).  At the plea hearing, the offense conduct specified by the prosecutor was as follows:

> IF THIS CASE PROCEEDED TO TRIAL, WE WOULD EXPECT THE EVIDENCE TO BE THE FOLLOWING.  THAT THE DEFENDANT OPERATED A TELEMARKETING BUSINESS FROM CANADA DURING THE PERIOD OF ABOUT AT LEAST AUGUST OF 2000 THROUGH AT LEAST JANUARY OF 2001.  AT THE TIME THAT HE OPERATED THIS TELEMARKETING BUSINESS, HE NEEDED CREDIT CARD PROCESSING SERVICES FROM THE VISA AND THE MASTERCARD CREDIT CARD SYSTEM.  THE VISA AND THE MASTERCARD CREDIT CARD SYSTEM RELIED ON PROCESSING BANKS TO PROCESS THEIR CREDIT CARDS.  THESE PROCESSING BANKS ARE BANKS, LOCAL BANKS, WHO SET UP ACCOUNTS FOR MERCHANTS.  THE DEFENDANT OPERATED BUSINESSES THAT WERE CONSIDERED MERCHANTS.
>
> THE DEFENDANT, PRIOR TO 2000, HAD BEEN KICKED OUT OF AT LEAST TWO BANKS, MAYBE THREE DIFFERENT BANKS REGARDING SOME OF HIS TELEMARKETING BUSINESSES.  THE PROBLEM WITH THOSE BANKS WAS THAT HE HAD EXCESSIVE CHARGE BACKS AT THOSE OTHER BANKS PRIOR TO SEARCHING FOR A BANK THAT ENDED UP BEING COMPASS BANK HERE IN ALABAMA IN 2000.
>
> CHARGE BACKS ARE SITUATIONS . . . HIS CHARGE BACK RATES AT THOSE OTHER BANKS WERE EXCESSIVE AND HE ENDED UP ON WHAT'S CALLED A TMF FILE.  TMF FILE IS WHAT VISA AND PROCESSING BANKS USE TO MAKE SURE THEY DON'T USE CUSTOMERS SUCH AS THE DEFENDANT,  HIS COMPANIES.  AGAIN, IT'S KIND OF LIKE BEING BLACKBALLED FROM THE MERCHANT CREDIT CARD MERCHANT.

AT THAT POINT, THE DEFENDANT MET A PERSON IN LAS VEGAS, NEVADA, BY THE NAME OF BILL POWELL.  BILL POWELL WAS IN THE ALLEGED BUSINESS OF CONNECTING UP HIGH RISK BUSINESSES SUCH AS THE DEFENDANT'S TELEMARKETING BUSINESS WITH BANKERS.  BILL POWELL HAD MET A BANKER HERE IN ALABAMA, JOHN PIERRE HARPER.  HARPER WORKED AT COMPASS BANK IN DECATUR AND HIS JOB WAS TO FIND MERCHANTS, SUCH AS THE DEFENDANT.  POWELL PUT HARPER TOGETHER WITH THE DEFENDANT AND HARPER WAS ABLE TO OPEN MERCHANT CREDIT CARD PROCESSING ACCOUNTS ON BEHALF OF THE DEFENDANT USING FALSE  INFORMATION.  HE SUBMITTED CERTAIN MERCHANT ACCOUNTS TO COMPASS BANK THAT REPRESENTED CREDIT CARD PROCESSING FOR THE DEFENDANT, BUT HE USED NUMEROUS FALSE REPRESENTATIONS IN THOSE DOCUMENTS, INCLUDING THE FACT THAT THE DEFENDANT WAS NOT NAMED ANYWHERE IN THE DOCUMENT.  ANOTHER PERSON WAS BROUGHT IN AND PAID MONEY TO BE USED AS THE NOMINEE ON THE ACCOUNT AND OTHER INFORMATION WAS WITHHELD FROM COMPASS BANK IN ORDER TO GET THIS MERCHANT ACCOUNT APPROVED BY COMPASS BANK.  COMPASS BANK HAD A POLICY NOT TO APPROVE TELEMARKETERS BECAUSE OF THEIR HIGH RISK NATURE.

HARPER DID ALL OF THIS, AND HE DID IT ALL ON THE BASIS THAT POWELL, IN VEGAS, AND THE DEFENDANT WOULD END UP PAYING HARPER, THE BANKER, A BRIBE.  HARPER WAS WAS [sic] ABLE TO CONCEAL FROM COMPASS BANK THE FACT THAT THE ACCOUNTS THAT HE SET UP FOR THE DEFENDANT HAD VERY LARGE CHARGE BACKS SOON AFTER THEY WERE SET UP AT COMPASS.  HE CONCEALED THAT AND EVEN LATER CHANGED FROM ONE ACCOUNT NAME TO ANOTHER ACCOUNT NAME.  THIS WAS DONE IN CONJUNCTION AND PHONE CALLS WITH THE  DEFENDANT AS WELL AS POWELL IN LAS VEGAS TO MAKE SURE THAT HIS CREDIT CARD PROCESSING CONTINUED WITHOUT COMPASS BANK, THE EMPLOYER, KNOWING ABOUT IT.

AND IN PARTICULAR, IN DECEMBER, IN FACT, ON DECEMBER 4TH OF 2000, POWELL SENT $20,000 IN CURRENCY AS A BRIBE PAYMENT TO HARPER IN HUNTSVILLE, ALABAMA.  IT WAS DONE ON BEHALF OF THE DEFENDANT, AND THAT WAS A PAYMENT TO HARPER TO CONTINUE KEEPING THIS PROCESSING ACCOUNT OPEN.

SOON AFTER THAT, IN MID-DECEMBER, THE DEFENDANT PAID HARPER 10,000 IN CURRENCY IN PERSON IN LAS VEGAS, NEVADA, AFTER HARPER HAD TRAVELED OUT THERE AND  MET THE DEFENDANT.  THE MONEY WAS CHANGED, CHANGED HANDS IN THE VENETIAN CASINO NEAR THE CASH CAGE.

THEN VERY SOON AFTER THAT, AN ACCOUNT THAT THE DEFENDANT HAD OPENED IN THE NAME OF AMERICAN CARD SERVICES WAS CHANGED TO ANOTHER ACCOUNT NAME BY THE NAME OF POLO HOLDINGS IN ORDER TO, FOR COMPASS NOT TO SEE THE LARGE CHARGE BACKS THAT WERE COMING TO AMERICAN CARD SERVICES.

THAT PARTICULAR ACCOUNT BEGAN PROCESSING SOON AFTER THE $10,000 CHANGED HANDS IN LAS VEGAS AND PARTICULARLY ON DECEMBER 18TH OF 2000.

FINALLY, IN A THREE WAY PHONE CONVERSATION THE DEFENDANT,

> POWELL, AND HARPER DISCUSSED THE FACT THAT HARPER NEEDED MORE MONEY FOR THE SERVICES HE WAS PROVIDING.  HARPER COULD RECOGNIZE ALL OF THE SALES THAT WERE FLOWING THROUGH THE BANK, RECOGNIZED THAT HE PROBABLY WASN'T GETTING PAID ENOUGH, AND HE DEMANDED MORE MONEY FROM THE DEFENDANT, AND THAT HAPPENED IN JANUARY OF '01.  NOW THE MONEY WAS TO BE PAID TO HARPER FOR CONTINUING ASSURANCES THAT HIS ACCOUNTS WOULD BE KEPT OPEN SO THAT THE DEFENDANT COULD PROCESS THE TELEMARKETING CHARGES.
>
> AS A BASIS OF ALL OF THIS CONDUCT, THE CONSPIRACY FAILED IN JANUARY OF '01.  COMPASS WAS OUT JUST RELATING TO THE DEFENDANT'S CONDUCT ABOUT FOUR MILLION DOLLARS IN CHARGE BACKS BECAUSE THE PROCESSING BANK WAS RESPONSIBLE FOR THE CHARGE BACK.  COMPASS WAS OUT MORE MONEY BECAUSE HARPER WAS DOING THIS WITH ANOTHER TELEMARKETER AT THE SAME TIME, ALSO SET UP BY MR. POWELL IN LAS VEGAS A [BLITZ MEDIA]. . . .
>
> . . . . THE DEFENDANT, ABOUT A YEAR AGO, WAS CONVICTED IN LOS ANGELES IN THE CENTRAL DISTRICT OF CALIFORNIA FOR MAIL FRAUD CHARGES UNDER 1341.  THAT CONDUCT RELATED TO HIS TELEMARKETING BUSINESS AND THE FACT THAT THROUGH HIS BUSINESSES, MANY PEOPLE WERE DEFRAUDED OF THE TELEPHONE AND WHAT I HAVE JUST DESCRIBED TO YOU AS THE FRAUD RELATING TO THE BANKING PORTION OF THIS.
>
> HARPER WAS IN DECATUR, ALABAMA, WHEN HE CONDUCTED ALL OF THE BANKING ACTIVITIES HE NEEDED TO CARRY OUT HIS PART OF THE CONSPIRACY.  AND COMPASS BANK OF COURSE IS INSURED BY THE FDIC.

After the prosecutor's statement, the defendant indicated that the factual basis provided by the United States was substantially correct.

The court explained Count Nineteen to the defendant, including the elements of the offense and the possible punishment.  The court made sure the defendant understood his constitutional rights and that by pleading guilty he was waiving the same.  The court also explained and discussed with the defendant the fact that he was waiving his right to appeal and his right to challenge the conviction and sentence in a post-conviction proceeding.  The defendant stated that he understood what he was waiving and that he intended to do so.  The court accepted the defendant's plea.

The defendant was sentenced on May 4, 2004, to a term of thirty-nine months custody.

There were no objections to the sentence. The court informed the defendant that if he believed that the appeal waiver was unenforceable, he could appeal that point, but he must do so within ten days. No appeal was filed.

The defendant filed the present motion on July 27, 2004. (Doc. 25). The United States Magistrate Judge assigned this matter required the United States to file a response to show cause why the requested relief should not be granted. (Doc. 26). The United States responded that the motion was due to be dismissed because the defendant knowingly, intelligently, and voluntarily waived his right to file a motion pursuant to § 2255. (Doc. 27 at p. 1).

The defendant was afforded an opportunity to reply to the response of the United States. He stated that his sentence was imposed in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). (Doc. 32). He filed a supplemental brief asserting that he did waive his right to file a motion pursuant to § 2255, but he did not do so knowingly and intelligently. (Dec. 1, 2004, Brief at p. 1). He goes on to state, however, that he did not waive his right to have his sentencing enhancements determined by a jury beyond a reasonable doubt. (*Id*.).

## DISCUSSION

### Waiver

The defendant agreed to waive his right to seek relief pursuant to 28 U.S.C. § 2255 when he entered his guilty plea in this case. That waiver is evidenced by the plea agreement. Additionally, he acknowledged that waiver during his guilty plea hearing. The defendant, who was under oath, indicated that he understood the plea agreement and the waiver provisions. The

5

court specifically informed him that the waiver would be enforceable, and that if he believed that it was not, that he should present his argument to the appellate court. The defendant did not appeal after he was sentenced.

As asserted by the United States, the Eleventh Circuit Court of Appeals has held that an appeal waiver provision in a plea agreement is enforceable if the waiver is made knowingly and voluntarily. *See United States v. Weaver,* 275 F.3d 1320, 1333 (11th Cir. 2001), *cert. denied*, 536 U.S. 961, 122 S. Ct. 2666, 153 L. Ed. 2d 840 (2002); *United States v. Pease,* 240 F.3d 938, 942 (11th Cir.), *cert. denied*, 534 U.S. 967, 122 S. Ct. 381, 151 L. Ed. 2d 290 (2001). Similarly, a waiver of collateral review has also been approved by the Eleventh Circuit so long as the United States demonstrates that the waiver was made knowingly, intelligently, and voluntarily. *Allen v. Thomas,* 161 F.3d 667 (11th Cir. 1998). The Eleventh Circuit views a waiver as a contract between the Government and a criminal defendant. It has stated:

> [A]mong the considerations that a defendant may offer as part of such a contract is waiver of his right to appeal, provided that the waiver is made knowingly and voluntarily. *See United States v. Bushert,* 997 F.2d 1343, 1350 (11th Cir. 1993). In this case, [the appellant's] waiver was clearly knowing and voluntary – he was specifically questioned by the district court regarding the waiver of his right to appeal. *See United States v. Buchanan,* 131 F.3d 1005, 1008 (11th Cir. 1997). The plea agreement is therefore enforceable and would appear to bar this appeal.

*United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999).

The record demonstrates that the defendant's assent to the terms of his plea agreement, including his waiver of his right to appeal and to pursue relief in a § 2255 motion, was knowingly, intelligently, and voluntarily made. The court specifically informed the defendant that the waiver in his agreement was enforceable, and that the Eleventh Circuit was the appropriate forum for any challenge to the enforceability of the waiver. Additionally, the record

demonstrates that the defendant had the ability to understand his decision to waive these rights. Accordingly, the defendant's motion is barred from review by this court.

### Barred From Relief

To the extent that the defendant asserts that he would be entitled to relief under *Blakely*, the court finds otherwise. The Eleventh Circuit Court of Appeals held in *In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004), that *Blakely* was not retroactive to cases on collateral review for purposes of the rules governing successive habeas corpus petitions. Similarly, the court has stated that the jury trial requirements of Sixth Amendment and the striking down of the mandatory application of the Sentencing Guidelines in *Booker*[2] are not matters appropriate for relief on collateral review for purposes of the rules governing successive petitions. *In re Anderson*, 396 F.3d 1336 (11th Cir. 2005). Finally, in *Varela v. United States*, ___ F.3d ___, 2005 WL 367095 (11th Cir. February 17, 2005), the court held that *Booker* was not retroactively applicable to cases on collateral review. Accordingly, the defendant is entitled to no relief on his claims.

### CONCLUSION

Premised on the foregoing, the defendant's motion to vacate (doc. 25) is due to be denied. An appropriate order denying this motion will be entered contemporaneously herewith.

Done this 17th day of March 2005.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
105854

---

[2] *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738, ___ L. Ed. 2d ___ (2005).